[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff (Dixon) brings this action under a complaint dated November 17, 1999, seeking money damages from the defendant (Parsons) pursuant to a retainer agreement dated February 18, 1994, (Exh. 1).
This case went to trial before the court with both parties appearing pro se. The plaintiff, Dixon, on December 6, 1999, was suspended from practicing law for nine months arising out of Parson's complaint resulting in the presentment by the Statewide Grievance Committee (Memorandum of Decision dated 12/6/99, Lager, J., CV 99-0426265S). Parsons asserts that Dixon brought this present action "as a measure of revenge" and that Parsons, who testified at the disciplinary hearing in March of 1998 and in September of 1999 of Dixon, that Dixon never brought up the issue of nonpayment pursuant to the agreement dated February 18, 1994. Parsons further asserts and argues in her post trial brief filed December 26, 2000, that the billing (Exh. 11) is a printout of expenses incurred in the three cases handled in some degree by Dixon during his course of representation of Parsons. The billing does not demonstrate which cases incurred the costs and the dates thereof. The court rejects this billing as unacceptable evidence to establish with any reasonable degree of certainty that the bills were necessary or attributable to a case. Parsons testified that Dixon had assured her at all times that there would be no fees due or costs unless he won the cases recited in the retainer. Dixon was not successful in the worker's compensation matter and no recovery in the Probate matter. Further, Dixon testified he was not seeking a fee for the Workers Compensation case or the Probate appeal. He is claiming, however, the costs incurred by his billing (Exh. 11) which this court rejects. During this trial the fees of Dr. Cohen's expert testimony was argued. Parsons asserts that she never authorized Dr. Cohen or agreed to pay his charges. Dixon, after suit, paid these charges or is liable for the doctor's testimony in the Workers Compensation case. Dixon testified he was not claiming payments for the transcripts of Probate or his out-of-pocket expenses. The court finds that the billings in Exhibit 11 are rejected for the reasoning set-forth CT Page 3132-es as to definiteness allocation and reasonableness.
The thrust of Dixon's claim rests upon his claim of a contingent fee for the AIG case. Attorney Christopher Chan, who was licensed to practice in Connecticut and New York, prepared all the pleadings and other documents in the AIG matter, which was returned to the United States District Court of Connecticut, entitled Mary Parsons v. AIG LifeInsurance Company, DN 2:92-CV-00580, which was settled at a hearing dated October 13, 1995 (Exh. 10). At that hearing, the plaintiff, Parsons, appeared pro se and the defendant, AIG, was represented by Joel M. Fain, Esq., of Morrison, Mahoney Miller, 100 Pearl Street, Hartford, Connecticut. Present at the hearing was Dixon and Attorney Chan (Chan).
A brief history is outlined as to the Dixon and Chan representation. Dixon and Chan were classmates at the University of Connecticut Law School. Chan was hired by Parsons in the latter part of December 1992 or early January 1993, for the Workers' Compensation AIG and Probate matters. Chan argued the Probate matter which resulted in an adverse decision for Parsons. Chan suggested that Parsons hire Dixon for the Workers Compensation case. Chan suggested Dixon as co-counsel to Parsons for the Workers Compensation case because of his expertise in the field. Parsons testified that Dixon called her to a meeting in his office on July 7, 1994. Dixon informed Parsons he would not handle the Workers Compensation Case which was to start in six days, unless Parsons discharged Chan in all matters and that Dixon handle all matters because he claimed he could not work with Chan. Dixon did not file his appearance in the AIG case until July 11, 1994. Parsons testified she was forced to discharge Chan and that the meeting of July 7, 1994 was very stressful. Parsons testified that Chan did all the work in the AIG case which now Dixon seeks a contingent fee of 33%; $133,000 plus interest.
On September 27, 1995, Parsons discharged Dixon with directions to turn over all files to Attorney James F. McCann of Wallingford, Connecticut (Exh. 15).
On July 13, 1994, Chan wrote a letter (Exh. 6) do Samuel E. Dixon addressed for Parsons in which he outlined the unfairness and his concerns about the effect it would have on her adversaries.
In the letter, Chan reminded Parsons of her obligations for fees and or, in his quantum meriut claim for legal services rendered to her from December 30, 1992, to July 7, 1994.
Chan further stated in closing "We are confident in the merits of your CT Page 3132-et case. We believe that we have taken your case to the point that you should prevail on everything that is due you: the insurance proceeds, plus prejudgment interest and attorney's fees. We urge you not to settle for a penny less."
Parsons testified she was never shown the letter (Exh. 6).
Chan testified the issue in the AIG matter was whether Parsons' husband died naturally in an accident or was it a suicide. Chan testified he suggested Dixon for the Workers Compensation case only.
Chan testified there was no contact by Dixon after the faxed discharge.
Jacob Parsons, (Jacob), the son of Parsons, testified that during his meeting between his mother and Dixon, the AIG matter did not come up for discussion. There was no evidence as to any fees as against Jacob by Dixon.
Although Dixon testified there was an offer of $20,000 on the Workers Compensation case before trial, Jacob testified he never heard of any such offer. Jacob testified throughout the Workers Compensation case Dixon said Parsons would owe him nothing unless they won.
Chan testified he sued Parsons on quantum meriut for his fees since he had a choice on that type of action or a contingent fee contract. Chan had no further contact with Dixon after his discharge. Chan had no knowledge of the Probate Appeal nor did he ever make a claim for his services in that case. Chan did appear at the settlement conference before U.S. Magistrate Judge Margolis (Ex. 10).
Chan testified it was his moving papers and all the work had been done by him except that Dixon had revised only the two front pages and substituted his two front pages adding one additional citation.
Dixon testified he received a call from Attorney Fain representing the defendant AIG with a willingness to arrive at a settlement when it was to start before Judge Chatigny, United States District Court of Connecticut.
Exhibit 10 outlines the activity of the AIG settlement which in pertinent part stated the following:
"On September 17 of this year (1995), before United States District Court Magistrate Judge Margolis, a lengthy settlement was held with CT Page 3132-eu Parsons, Dixon, Fain and William Waite, a representative of AIG. By then, the relationships between Parsons and Dixon had deteriorated to such an extent that Parsons no longer wants Attorney Dixon to represent her and refused to be in the same room.
During the conference AIG made a significant offer to Parsons which she wanted more time to consider. In addition, a related issue arose with respect to attorney's fees, if any, Dixon was entitled to attorney's fees. Defense counsel Fain and Magistrate Judge Margolis suggested that if the case settled, perhaps Parsons would be paid her share and the balance of the disputed fees would be held in escrow until the Connecticut Bar Associations pending arbitration of the attorney's fees dispute by its Legal Fee Arbitration Committee, at that time, Dixon agreed to such a process.
On October 4, 1994, Parsons notified Judge Magistrate Margolis that she was willing to accept AIG's offer of $400,000 and would consent to arbitration of her fee dispute.
By coincidence, that same day, the clerk received a phone call from Attorney Chan who also believes he is entitled to an attorney's fee as a result of the settlement."
Judge Magistrate's clerk, distributed to Parsons, Dixon and Chan, the documents required by Connecticut Bar Associations Legal Fee Arbitration Committee.
The AIG case was settled as follows: (Page 5, Ex. 10).
"The sum of $225,000 will be paid to Parsons. The balance of $145,000 will be held in escrow by Fain pending the fee arbitration. All the necessary parties agreed."
Parsons engaged Attorney William H. Champlin, III to represent her for the arbitration and finalizing the settlement agreement.
In the proceeding before the Legal Fee Arbitration Board of the Connecticut Bar Association the award of the arbitrators found as follows: (See Exh. 8).
 Atty. Chan Fees $46,160.00 Costs 1,166.26
Total $47,326.26
 Atty. Dixon Fees $7,500.00 CT Page 3132-ev Costs 1,580.29
Total $9,080.29
The awards were made on October 25, 1996.
This court obtained from the Connecticut Bar Association a letter dated February 4, 1997 from the Executive Director, Edward L. Johnson, Jr., addressed to Attorney Champlin, of Tyler, Cooper and Alcorn, an outline of the awards. The letter discloses that Dixon would not appeal the decision of the award pending a decision by Judge Hodgson of an application to vacate. (See Court's Exh. 1). Judge Hodgson denied the motion to vacate as being untimely.
Parsons, further argues, that she never suspected this lawsuit when she filed for bankruptcy because Dixon had never sent her a bill or a copy of his billings under Exhibit 11.
Contrary to the argument of the Dixon Post Trial Brief that he brought about the settlement with AIG, the court finds that Dixon failed to show that he was in anyway instrumental in the settlement. Further, the arbitrators found the total fees and awarded Chan most of that award. Dixon's argument that "Parsons rode him like a horse absent food or water for 18 months and once she achieved her desired destination she dropped him like a bad habit and disaffirmed the very contract she signed in my presence some two years earlier" is misplaced in this case.
Chan testified that Dixon tried to get him to split the award after arbitration which he refused.
In the case of Ronan v. Rosenblatt, No. CV 93-0116887S (August 13, 1999 Judicial District of Waterbury at Waterbury, Vertefeuille, J.) the court discussed the appropriateness of a contingent fee.
The court held that the burden is on the defendant to prove by clear and convincing evidence that a contingent fee is fair and that courts will look closely at a contract for contingent fees and will declare it void if the compensation is unfair or excessive. The evidence in this case show that Dixon obtained the agreement for the contingent fee agreement (Exh. 1) when Parsons signed the agreement only six days before the trial of the Workers Compensation case under stressful circumstances. Also, it appears that Dixon was trying to force Chan out of the matter of AIG and not arrive at some arrangement satisfactory to Chan for his work up to the date of Chan's discharge. CT Page 3132-ew
In Ronan v. Rosenblatt, the court discussed when a contingent fee is appropriate. In this case, the court finds that a contingent fee was inappropriate under the circumstances. It is inappropriate to suggest that Dixon's contingent fee should be enforced and is void as being unreasonable under the circumstances of the amount of work he did or the risk involved. (See Ronan, supra). Dixon pushed his way into the AIG case and persuaded Parsons to discharge Chan who had done most of the work in the case as outlined in Chan's letter (Ex. 6).
The court finds the contingency fee agreement void as being unreasonable under all the circumstances. Dixon did not show that he brought up the contingency agreement during arbitration or late disciplinary hearings for other matters.
The court accordingly finds the contingency agreement under the complaint is unreasonable and unenforceable. Judgment may enter in favor of the defendants.
Franks S. Meadow Judge Trial Referee